Cameron Reuber
Lauren Emerson
Lauren Sabol
LEASON ELLIS LLP
One Barker Avenue, Fifth Floor
White Plains, New York 10601
Phone: (914) 288-0022

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DDLH PRODUCTIONS, INC., *a corporation*,<br><br>*Plaintiff*,<br><br>v.<br><br>MARIE HINSON, *an individual*,<br><br>*Defendant*. | Civil Action No. 1:22-cv-00315<br><br>ECF Case<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff DDLH Productions, Inc. ("DDLH" or "Plaintiff"), by and through its attorneys, Leason Ellis, for its Complaint against Defendant Marie Hinson ("Hinson" or "Defendant"), on personal knowledge as to Plaintiff's own activities and on information and belief as to the activities of Defendant, allege the following:

### NATURE OF THIS ACTION

This action arises out of an unfortunate business dispute between the parties deriving from Defendant's various assertions that Plaintiff is not entitled to commercialize a motion picture that Plaintiff has produced and financed entitled *Frank Bey: All My Dues Are Paid*. Specifically, the Defendant pre-registered a copyright in Plaintiff's Film (defined below) in her own name, which resulted in a dispute between the parties as to their respective rights to the Film, inclusive of Defendant making various demands that have impaired Plaintiff's ability to

market the Film.  Defendant's conduct has caused, and is continuing to cause, damage to Plaintiff's ability to commercialize the Film, as well as Plaintiff's reputation with financial sponsors, festival organizations, music licensing companies, and others in the motion picture industry.  Despite Plaintiff's best efforts to resolve this dispute, the parties have been unable to resolve their differences.  Defendant's counsel has made, and continues to make, unreasonable demands of Plaintiff relative to the release of the Film and has threatened to sue Plaintiff for copyright infringement.  Plaintiff refuses to accede to such unreasonable and unjust demands.  Accordingly, Plaintiff seeks a declaratory judgment that the Film does not infringe any valid copyright of Defendant, including Preregistration No. PRE000012140, as well as any other appropriate relief that the Court deems just and proper.

## THE PARTIES

1. Plaintiff DDLH Productions, Inc. is a corporation organized under the laws of Pennsylvania with its principal place of business at 513 San Diego Avenue, Hollywood, PA 19046.

2. Upon information and belief, Defendant Marie Hinson is an individual residing at 1686 Nostrand Avenue, Brooklyn, New York, 11226.  Upon information and belief, Defendant formerly used the name Paul Hinson.

## JURISDICTION AND VENUE

3. This action asserts claims arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 2201.

4. This Court has personal jurisdiction over Defendant because, upon information and belief, Defendant is domiciled in this District and continuously and regularly does business in New York.

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) in that Defendant resides in, engaged in the acts giving rise to this action in, and is subject to personal jurisdiction in this District.

## FACTS COMMON TO ALL COUNTS

### The Bey Documentary Films

6. In late 2015, Tom Dwyer decided to create a short documentary film about a Philadelphia Blues singer named Frank Bey.

7. In early 2016, Tom Dwyer engaged Defendant to shoot and produce a 20-minute documentary film based on Frank Bey concert scheduled at the Elkins Park train station (Elkins Park, Pennsylvania) and a subsequent interview ("Short Film I").

8. Dwyer arranged, paid for, and assisted in the filming of Short Film I.

9. Defendant was a former film student at Temple University and Dwyer acted in a few of Defendant's student films, gratis, so that Defendant could meet her education requirements at Temple.

10. Defendant had minimal directing experience limited to short student films and no prior experience directing a full feature, documentary film.

11. Dwyer determined that additional footage would enhance the project so Short Film I was subsequently expanded to include footage from the International Blues Foundation in Memphis, where Bey was nominated as Soul Blues Artist of the year ("Short Film II"). As very limited budget was available for the Memphis shoot, Defendant offered to defer her compensation, provided that Plaintiff cover all associated travel, lodging, meals and miscellaneous fees covered.

12. Dwyer made all arrangements to attend the awards show, secured permissions from the venue to shoot, and secured releases from applicable parties.

13. At Dwyer's direction and Bey's approval, Defendant shadowed and filmed Bey at the event.

14. Because of increasing interest in Bey and his story, Dwyer decided to make a full feature film documentary on Bey and his life ("the Film").

15. Over time, the parties discussed the arrangement and, ultimately, Dwyer and Defendant verbally agreed to have Defendant shoot certain content and assist in the creation of the Film in exchange for Defendant getting a deferred salary (which Defendant memorialized in a number of budgets generated by Defendant) once the Film was sold, provided Plaintiff would make all Film arrangements, determine which shoots would be undertaken/financed, secure permissions and releases as needed, and pay for all film-related expenses.

16. In late 2016, Dwyer and Defendant began collaborating on the content for the Film. Such collaboration included all aspects of the film and filmmaking, such as: co-writing and developing the treatment; discussing the arc of the Film; researching archival vaults and engaging with other documentary filmmakers to identify crucial aspects of documentary filmmaking; attending courses in pitching and other film-related subjects; researching other documentaries and comparative budgets; and arriving at the first movie title, *50 Years to the Top*.

17. On January 11, 2017, Dwyer created Plaintiff DDLH to manage the creation, production, postproduction and exploitation of the Film. Mr. Dwyer is the President and Secretary of Plaintiff DDLH, having assigned any and all rights, title, and interest to the Film to DDLH.

18. From 2017-2019, Plaintiff arranged for further footage for the Film to be shot at Plaintiff's direction and expense.

19. All filming and shoots were approved, paid for, and largely overseen, by Plaintiff.

20. Plaintiff paid all Film expenses and secured all permissions and releases relating to the shooting of the Film.

21. Upon information and belief, Defendant did not pay for the Film expenses and did not enter into any contracts with third parties relating to the Film.

22. Plaintiff DDLH negotiated and entered into various contracts, and obtained releases and permissions, from third parties relating to the Film.

23. Defendant was not permitted to incur any expenses or spend Film funds before discussion and approval of Plaintiff.

24. At all relevant times, Plaintiff retained primary creative control over the Film.

25. Following the 2019 International Blues Foundations awards shoot for the best album and best song nominations for *Back in Business*, Defendant indicated to Plaintiff that Defendant did not wish to shoot any additional footage for the Film, explaining that she (Defendant) was moving into new directions towards writing and virtual reality projects and was moving away from cinematography. Defendant indicated she would finish work on the Film, but did not want to shoot anything further.

26. In Fall 2019, Plaintiff encouraged and financially supported Bey to go to Kid Andersen's Greaseland Studios in California to complete work on a new album, *Frank Bey: All My Dues Are Paid*. Plaintiff funded all of Bey's travel and recording costs and attended all recording sessions with Bey. Plaintiff was there to assist as Bey's health was increasingly fragile. Defendant had no involvement regarding this project.

27. In June 2020, Bey passed away. Later that year, Bey's final album, *All My Dues Are Paid*, was nominated for a Grammy as well as two additional International Blues Foundation awards.

**Defendant Ceases Involvement in the Film**

28. In mid-2019, Defendant moved to New York and significantly decreased her involvement in the Film.

29. To move the film forward toward completion (after 5 years), Plaintiff hired Lisa Palattella, an experienced and award-winning film editor, to edit the Film and ideally complete it before the end of 2021 to keep the Film relevant as Bey's passing in 2020 and the Grammy nomination in 2021 could still be seen as timely and contemporaneous.

30. After Palattella's addition to the project, the parties' ability to productively collaborate on the Film substantially deteriorated with Defendant's ultimate decision to withdraw from all Film production activity via email notice before the completion of the editing process.

31. Plaintiff was nevertheless able to finish the Film, ultimately changing the title to *Frank Bey: All My Dues Are Paid* and targeting a release date in early 2022.

32. The Film contains footage that was shot by Defendant as well as footage shot by Plaintiff's other camera operators.

33. The final editing and creative work for the Film, as well as audio and color correction, was completed without any input or contribution from Defendant.

34. Defendant and Palattella were listed as co-directors of the Film.

**Defendant's Assertion of a Copyright Claim As a Basis to Assert Control Over the Film**

35. In early October 2021, after two-and-a-half-months away from the production, Defendant indicated that she was ready to return to the project.

36. Despite a July 2021 email from Defendant directing Plaintiff to finish and market the Film without her, Defendant was upset that the Film was finalized without her input and stated that the Film could not be completed without her (Defendant's) approval.

37. Upon information and belief, Defendant filed Preregistration No. PRE000012140 ("the '140 Preregistration") on November 23, 2021 for the motion picture titled *Frank Bey: You're Going to Miss Me*.

38. The '140 Preregistration purports to cover the Film and lists Defendant as the sole copyright claimant and author.

39. The plot articulated in the Description of Work in the '140 Preregistration is identical to the plot of Plaintiff's Film.

40. The name of the motion picture in the '140 Preregistration is the name Plaintiff previously used prior to renaming the Film in its final editing stages.

41. Defendant's filing of the '140 Preregistration was without Plaintiff's knowledge, authorization or consent.

42. Upon information and belief, Defendant has not filed for registration of the material in the '140 Preregistration with the United States Copyright Office.

43. On the same day as the '140 Preregistration's filing, November 23, 2021, Defendant's attorney, Paul Szynol, communicated various demands of Plaintiff concerning the Film, citing Defendant's copyright as the basis for same.

44. The parties subsequently attempted to resolve their disputes amicably.

**Defense Counsel's Unwarranted Demands and Baseless Allegations of Bad Faith**

45. Negotiations between the parties proceeded, however, Defendant's counsel became increasingly and unnecessarily hostile toward Plaintiff, inclusive of making various unreasonable and unsupported demands as well as many and varied baseless accusations of "blatant and continued knowing and willful infringement." Defense counsel further indicated that, if his demands were not met, Defendant would be entitled to "statutory damages in the amount of $150,000 per claim" for Plaintiff's alleged "willful and knowing infringement."

7

46. These many and varied threats continued until the morning of January 18, 2022, with Defendant's counsel making further demands/infringement allegations followed by an inquiry to Plaintiff's counsel asking whether she was "authorized to receive service of process."

47. Plaintiff understood this communication from Defendant to mean that settlement negotiations had been terminated in favor of litigation.

48. While the '140 Preregistration purports to cover the Film, Defendant has made other allegations as to authorship and copyright ownership of the Film's underlying Raw Footage and Content. Raw Footage and Content, as referred to herein in this Complaint, means any footage shot for the Film or content created for the Film, regardless of whether that footage or content was used in the final cut of the Film.

49. As a direct result of Defendant's counsel escalation of meritless legal rhetoric and associated threats of litigation on behalf of Defendant against Plaintiff, Plaintiff now understands that real and justiciable dispute exists between Plaintiff and Defendant regarding the metes and bounds of Defendant's right to the Film, if any.

50. Thus, Defendant's aforementioned conduct gives rise to an actual case or controversy under 28 U.S.C. §§ 2201 and 2202 that requires declaratory judgment by a district court to resolve.

## COUNT I – DECLARATORY JUDGMENT
**(Plaintiff is Not Liable for Copyright Infringement)**

51. Plaintiff repeats and realleges by reference each and every allegation contained in the paragraphs above.

52. An actual and justiciable controversy exists between the parties as to whether the Film or Plaintiff's use of the Film's underlying Raw Footage and Content infringes any copyright of the Defendant, including the '140 Preregistration.

53. An actual and justiciable controversy further exists between the parties as to whether Defendant has any copyright ownership interest in the Film or its underlying Raw Footage and Content.

54. Pursuant to applicable law, the Film is a merged work to which Plaintiff owns the copyright.

55. Defendant's directorial services on the Film do not constitute a fixed expression, nor do they constitute authorship, within the meaning of the Copyright Act, 17 U.S.C. §§ 101 *et seq*.

56. Plaintiff was the dominant author of the Film and thus also owns the copyright in any underlying Raw Footage and Content.

57. Plaintiff had decision making authority, initiated the project, obtained filming approvals and releases, coordinated the filming, selected crew, consultants and directors, acquired rights to music, sound and other features to be used in the Film, controlled the production schedule, approved and paid for all expenses incurred with the Film, coordinated the Film's fundraising, publicity and release, and entered into agreements with third parties relating to the Film.

58. Defendant did not have decision making authority and did not enter into any agreements with third parties relating to the Film.

59. Defendant did not pay for any portion of the Film.

60. Any and all of Defendant's independently copyrightable contributions in the Film were "made for hire" or were assigned to Plaintiff.

61. The Film also contains footage shot by third parties. This footage was either "made for hire" or assigned to Plaintiff. Defendant has no authorship or ownership interest in any footage shot by third parties.

62. Neither Plaintiff nor Defendant intended for Defendant to be considered an owner, in whole or in part, of the Film or its underlying Raw Footage and Content.

63. Rather, it was always intended and agreed by Defendant that Plaintiff would be the sole owner of all right, title, and interest in and to the Film and its underlying Raw Footage and Content.

64. The harm to Plaintiff is real and immediate because Defendant's conduct is detrimental to Plaintiff's ability to promote, screen and distribute its Film in the near future, which will foreclose significant opportunities. Specifically, due to Bey's recent passing and Grammy nomination, the Film has current appeal and interest that may be diminished or lost if its release is delayed.

65. Plaintiff have no adequate remedy at law.

66. Plaintiff are entitled to a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57, that Defendant has no copyright ownership interest in the Film or its underlying Raw Footage and Content.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests entry of judgment against Defendant as follows:

A. Issuing a declaration that:

   i. Defendant has no copyright ownership interest in the Film or its underlying Raw Footage and Content;

   ii. Plaintiff owns the copyright in the Film and its underlying Raw Footage and Content;

   iii. Plaintiff owns the copyright in the material in Preregistration No. PRE000012140;

      iv.      The Film, and Plaintiff's use of any underlying Raw Footage and Content, does not infringe any copyright of Defendant, including Preregistration No. PRE000012140; and

      v.      Defendant committed fraud on the United States Copyright Office through the filing of Preregistration No. PRE000012140 by (1) intentionally omitting Plaintiff's authorship and ownership information and claiming that Defendant was the sole author and owner, (2) misrepresenting that Defendant was preparing the Film for commercial distribution, and (3) improperly filing a preregistration to attempt to obtain copyright protection for raw footage, thus rendering Preregistration No. PRE000012140 invalid and/or necessitating correction of authorship and ownership.

    B.    Entering a temporary, preliminary, and permanent injunction and restraining order against Defendant to prevent Defendant from asserting that she is the copyright owner of the Film or any of its underlying Raw Footage and Content, and interfering in any way in Plaintiff's ownership, use, promotion, or distribution of the Film or any of its underlying Raw Footage and Content;

    C.    Ordering Defendant to contact the United States Copyright Office to withdraw the '140 Preregistration or amend it to identify Plaintiff as the sole author and copyright claimant;

    D.    Ordering Defendant to pay actual and compensatory damages caused by its unlawful conduct, in an amount to be proven at trial;

    E.    Awarding Plaintiff its costs and attorneys' fees pursuant to 17 U.S.C. § 505 and 28 U.S.C. § 1927;

    F.    Awarding punitive damages; and

    G.    For any other relief that the Court deems just and proper.

## JURY DEMAND

Plaintiff, pursuant to Fed. R. Civ. P. 38, demands trial by jury on all issues triable to a jury.

Dated: January 19, 2022
      White Plains, New York

Respectfully Submitted,

LEASON ELLIS LLP

_____
Cameron Reuber
Lauren Emerson
Lauren Sabol
One Barker Avenue, Fifth Floor
White Plains, NY 10601
Tel: (914) 288-0022
Fax: (914) 288-0023
Email: Reuber@leasonellis.com
Email: Emerson@leasonellis.com
Email: Sabol@leasonellis.com

*Attorneys for Plaintiff*